182141. Mr. Zass, good morning. Good morning, Your Honors. May it please the Court, Edward Zass v. Sammy Smith. I'd like to begin by discussing why this export control scheme is substantially overbroad under the First Amendment. I'll then address some of the government's arguments, including its claim. Why do you say the scheme? Why is this about the entire statute, et cetera? Isn't your beef really with that one line of the regulations that classifies data as prohibited export under the scheme? If that wasn't there, would you have any case at all? Well, I wouldn't characterize it as one line, but it's the term technical data defined, which then pervades the statute. Why do you say it pervades the statute? If that were severable, if that's unconstitutional, what does that have to do with your guy? He didn't export any data. He's not charged with exporting data. He didn't, in fact, export anything as far as the record shows that could be classified as data. He's charged with exporting pistol parts. That's right. But the key to your question was the if. If it's severable. You agree that if it is severable, then you don't really have an appeal. That's right. If it's severable, then my client wouldn't benefit from. So let's focus on severability. Why is this not severable? Well, so severability is ultimately a question of legislative intent. A strange kind of legislative intent because it's hypothetical legislative intent because presumably the legislature didn't think about what should be done if parts of the statute were unconstitutional. Why is it even part of the statute? There's a delegation to the executive to list things that are prohibited. Why would we attribute to Congress an intent that the executive classify as exportable items or not even items, but information that it would be unconstitutional to prohibit, assuming for the sake of the argument that it is unconstitutional to prohibit that. Your Honor, I'm not sure why you need to attribute it to Congress. Congress made it a crime to willfully export defense articles. Right. And the executive says, aha, suppose they said, and a defense article is the New York Times, and so we're going to prohibit any export of the New York Times or any reading of the New York Times on a radio or television station that reaches as far as Canada, that would make the executive did that, that would make the entire statute unconstitutionally overbroad because the executive branch adds an unconstitutional definition or itemization of something to the statute and calls it a defense article? Well, but the regulations here are promulgated by the State Department. They have the force of law. All right, fine, they do. But why is that? Why does that have anything to do with the constitutionality of the statute under which your client is prosecuted? The statute doesn't say anything about data or information. The statute says defense articles. And now the executive branch throws something in there which hypothetically, assuming for the sake of the argument, is unconstitutional. Why does that make the whole statute unconstitutional? Why does that make the legitimate things that clearly raise no First Amendment objection that the executive also classifies as defense articles that can't be exported? Somehow, now it's all about this one thing that is a substantial category of information that Congress maybe never even imagined would get classified under this statute. I think there's a two-part answer. First, my recollection is fading me, but I do think somewhere in the statute it does refer to related technical data. So I don't think it purely comes from the executive. But even if it did come from the executive, I think the government, by the way, I think agrees with us on this point. This was not just an afterthought by the State Department. This was essential to the entire, I call it scheme only because it's both the statute and the regs. The government agrees that Congress would not have, Congress and the executive, would not have enacted this scheme if it only covered the physical armaments. Really? I didn't hear the government to say that. We'll hear from them in a minute. But your view is that if Congress knew that blueprints for a Colt 45 could be transported, that they then would have said, well, let the guns go, too? No, no. They would have. They would have. They can regulate both, but Congress would not have wanted one without the other. And what they would have done, presumably, is enact technical restrictions, restrictions on the technical information that complies with the First Amendment. In other words, would you point us to something concrete? I'm sorry? Point us to something, some language, concrete language from Congress that supports this particular contention. I'm sorry. Of course. Your Honor, I'm sorry. I don't have the legislative history in front of me, but I do have what we said in our reply brief, which was from the government's brief in the defense distributed  They said, quote, I think that's right. That's what these assistant U.S. attorneys say? Well, they say now that to take out the technical information or to sever the technical information portion only would thwart the whole scheme. That's on pages, I think it's 31, 32 of their brief. I think that's right. I think that's right. Look, in some ways this is a silly exercise, because we are, as you said, engaging in a hypothetical as to what Congress would do had they known that some part of their statute was going to get struck down. But you really do think that they would say, well, if we can't stop the blueprints, well, let the nukes fly? I mean, really? No, but I don't think that's the binary choice. So what is the choice? The choice is to prohibit both the military equipment and the related technical information, but to define it in a way that's consistent with the First Amendment. Then you're back to the problem of the State Department overdefining the technical data or something like that, right? Because that, too, if Congress would have said, oh, I see, if we can't have this very broad definition that we didn't even inject into the statute, then we should define data more carefully, they could do that. But I don't understand why there is any reason to think that Congress would not revert to revising or leaving alone whatever they choose to do, the data, when they've clearly focused on defense articles, and defense articles are what are in issue here. It's actual guns. So, I mean, it's not quite the case that we're just talking about a very overbroad definition. I think you've suggested that to the extent that data in general is in the statute, that's not necessarily a problem, because if they did a more restrained technical definition, if the regulations implemented a more restrained technical definition of what data means, that would be okay, too. Well, that's right. And we're back to it's the State Department's regulation that has in this one section that your client is not charged with violating perhaps overdefined what data includes in a way that would be unconstitutional. And that that would be such a significant part of the likely applications of this statute that it, you know, all but dwarfs the legitimate applications that come under the other nine or ten categories in the definition of defense articles. And that's what substantial overbreadth would mean. But I think that's common to have the defendant before the court whose conduct is not protected at all. By definition, that's an overbreadth challenge to say, but there's all these other people also affected by the statute. I'm using statute again. It's the whole scheme working together. I'm not sure I can move you any more than I've tried to move you, but this all goes to the standing question. Our position is that because the entire statute together with the regs, which have been in existence for about 40 years with changes, with an ever-growing amount of speech punished, that severing, excising just the technical information part would be so inconsistent with what both the Congress and the executive contemplated that it would not be the court's role to decide, well, here's the statute we think Congress ought to pass. These were clearly meant to work together. Again, I think the government agrees with us that the two components were to work together. And so if we prevailed on the informational part, the remedy would be to strike the scheme, in which case the conviction would go. Roberts. We'll hear from the government, but you agree that we have, I mean, this Court has no precedent on this point. This Court has not. It's an issue of first impression. I understand that there's another case pending. It's about a law firm, Stag, S-T-A-G-G-P-C. S-T-A-G-G. That's a law firm, I believe, that claims that it is inhibited from giving public webinars or educational programs because of the statute. Breyer. What's interesting about that is there's somebody who does have standing to raise this issue, right? I mean, they're saying we are inhibited, or at least that's a pretty good argument. Whether how our colleagues decide in that case will decide, I don't know. I don't know all the facts of it. But they're saying we are inhibited by this statute from doing something that is absolutely constitutional. That's right. That's right. But that — I don't know the case that well, either. But I understand the government is making some standing arguments there. But I think the challenge they're bringing there is an as-applied to them. I'm not even sure they could bring a facial overbreath if the challenge is as to them. Now, of course, we can't, for the reasons you have identified, Your Honor. This is not an as-applied challenge. It's a facial challenge that, in many ways, the severability is the key to standing, a little backwards than it normally is. But if you find that it would be severable, then I agree. Then we don't have standing. We wouldn't benefit from a ruling in our favor. I see I'm out of time. I didn't get to the merits. But I did want to underscore that some courts out there have given this essentially the back of the hand. But there really are very serious First Amendment implications from the way the State Department has broadly defined both the terms technical data and export. You do have two minutes for rebuttal, and I understand the argument relating to the fact that they're not content neutral. But let's hear from the government. Thank you so much. And then we'll hear from you in a few minutes. Good morning, Your Honors, and may it please the Court. My name is Andrew Grubin. I am an assistant U.S. attorney for the Eastern District of New York, and I represent the government. The defendant asked this Court to strike down the entirety of this country's 40-year-old arms export regulatory control regime, despite the fact that he agrees that the AECA and ITAR are constitutional as applied to his conduct. That conduct was attempting to smuggle weaponry onto an airplane bound overseas. The defendant does not have Article III standing to raise his First Amendment arguments. Answers to the constitutional questions or the constitutional issues he raises about technical data in the abstract have nothing to do with his criminal conviction. In other words, a decision by this Court on those issues would not redress his injury. Likewise, the defendant does not have prudential standing to argue on behalf of third parties, such as Your Honors referred to, not before this Court. Simply put, the defendant's conviction has nothing to do with the AECA or its implementing regulations or the provisions of those regulations he alleges are constitutionally problematic. Therefore, the Court should affirm the defendant's conviction, unless Your Honors have any questions. Are you suggesting that we don't need to reach the severability issue at all? No. No, Your Honor. I think that the severability question is part of the Article III issue. That's just another way of saying what you're saying? Is that your position? Correct, Your Honor. I'm not calling it severability or calling it standing. Either way, the challenge is not really even that – it's not that the statute is overbroad. It's that one particular provision of the regulation, which itself has constitutional applications as conceded by the defendant just now, that that provision of the regulations is overbroad. And your position is that's not a proper challenge to make. Correct, Your Honor. Okay. Thank you very much. Thank you. Your Honors, unless the Court has further questions, I'll just rest on my brief. Thank you very much. Thank you. We'll reserve the decision. We'll hear argument next.